# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF ARKANSAS
# BATESVILLE DIVISION

CALVIN TERRY                                                                                           PLAINTIFF
ADC #116765

v.                                                1:19-cv-00022-DPM-JJV

TOM BRADSHAW, Chaplain,                                                                        DEFENDANTS
Grimes Unit, *et al.*

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following supplemented recommended disposition has been sent to Chief United States Judge D.P. Marshall Jr. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1. Why the record made before the Magistrate Judge is inadequate.

2. Why the evidence proffered at the hearing (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3. The details of any testimony desired to be introduced at the new hearing in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the new hearing.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing. Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## **DISPOSITION**

### I. INTRODUCTION

On March 26, 2019, Calvin W. Terry ("Plaintiff") sued multiple Arkansas Department of Corrections ("ADC") officials alleging violations of his rights under the First Amendment and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). (Doc. No. 2.) Specifically, Plaintiff, who identifies as Jewish and, as of April 7, 2020, Assembly of Yahweh, alleged his rights were violated in three ways while he was incarcerated at the Grimes Unit of the ADC: (A) the ADC did not offer Saturday religious services; (B) the ADC did not provide him kosher meals; and (C) the ADC did not provide kosher choices in the commissary. (*Id*.; Doc. No. 49-5.) On April 24, 2019, Plaintiff asked the Court to dismiss Defendants Maurice Culclager, Steven Ricketts, and Gary Musselwhite, and on December 31, 2019, he asked for the dismissal of Defendant Ralyina Ramsey. (Doc. Nos. 18, 33.) Plaintiff's claims against Culclager, Ricketts, Musselwhite, and Ramsey have been dismissed. (Doc. Nos. 19, 34.)

Plaintiff's claims against Grimes Unit Chaplain Tom Bradshaw, Warden DeAngelo Earl, former ADC Deputy Director Dexter Payne, and former Director Wendy Kelley (collectively "Defendants") remain pending; he sued Defendants in their personal and official capacities. (Doc.

2

No. 2 at 1-3.)  Plaintiff seeks a declaration that Defendants' acts and omissions violated his federally-protected rights; transfer "to any one of the numbers facilities within the ADC that can accommodate [his] religious needs, preferably [the] Varner Unit"; and damages.  (*Id*. at 10-11.)

Defendants filed a Motion for Summary Judgment.  (Doc. Nos. 37-39.)  Plaintiff did not respond within the time he had to do so.  On February 19, 2020, I recommended Defendants' Motion for Summary Judgment be granted.  (Doc. No. 40.)   After my Recommendation was entered, Plaintiff responded to Defendants' Motion.  (Doc. Nos. 41 and 47.)  As a result, I withdrew the Recommendation and gave Defendants the chance to file a Reply.  (Doc. No. 43.)  Defendants have now replied.  (Doc. No. 49.)  After careful review of Defendants' Motion, Plaintiff's Responses, and Defendants' Reply, I recommend Defendants' Motion for Summary Judgment be GRANTED and this case DISMISSED without prejudice.

## II.    SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A party asserting that a fact cannot be or is genuinely disputed must support the assertion by citing to particular parts of materials in the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]"  Fed. R. Civ. P. 56(c)(1)(A).

When ruling on a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmoving party.  *Naucke v. City of Park Hills*, 284 F.3d 923, 927 (8th Cir. 2002).  The nonmoving party may not rely on allegations or denials, but must demonstrate the existence of specific facts that create a genuine issue for trial.  *Mann v. Yarnell*, 497 F.3d 822, 825

(8th Cir. 2007). The nonmoving party's allegations must be supported by sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy. *Id.* (citations omitted). A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case. *Othman v. City of Country Club Hills*, 671 F.3d 672, 675 (8th Cir. 2012). Disputes that are not genuine or that are about facts that are not material will not preclude summary judgment. *Sitzes v. City of West Memphis, Ark.*, 606 F.3d 461, 465 (8th Cir. 2010).

### III.   ANALYSIS

For the reasons set out below, summary judgment should be entered in Defendants' favor and Plaintiff's claims should be dismissed.

#### A.   Official Capacity Damages Claims Barred by Eleventh Amendment

Plaintiff sued Defendants in both their personal and official capacities and seeks damages, among other relief. (Doc. No. 2 at 10-11.) His official capacity claims for damages are barred pursuant to the doctrine of sovereign immunity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (a suit against a state official in his or her official capacity is not a suit against the official but rather a suit against the official's office and, as such, is no different from a suit against the state itself, which is barred by the Eleventh Amendment unless the state has waived its immunity); *Burk v. Beene*, 948 F.2d 489, 493-94 (8th Cir. 1991) (the State of Arkansas has not waived its Eleventh Amendment immunity). Further, Arkansas has not waived immunity for claims brought under § 1983 and RLUIPA's language does not effect a waiver of a state's sovereign immunity. *Murphy v. Arkansas*, 127 F.3d 750, 754 (8th Cir. 1997); *Sossamon v. Texas*, 563 U.S. 277, 285, 293 (2011); *Van Wyhe v. Reisch*, 581 F.3d 639 (8th Cir. 2009). Accordingly, I recommend Plaintiff's official capacity damages claims be dismissed.

### B. Individual Capacity RLUIPA Claims

The United States Court of Appeals for the Eighth Circuit has held that because Title IX was enacted under the Spending Clause, "Title IX will not support an action against [a school official] in her individual capacity." *Kinman v. Omaha Pub. Sch. Dist.*, 171 F.3d 607, 610-11 (8th Cir.1999). This is the same rationale for rejecting individual liability under RLUIPA adopted by the United States Court of Appeals for the Fourth Circuit in *Rendelman v. Rouse*, 569 F.3d 182 (4th Cir. 2009) and the Seventh Circuit in *Nelson v. Miller*, 570 F.3d 868, 885-89 (7th Cir. 2009). The Court of Appeals for the Eighth Circuit affirmed summary judgment where the district court dismissed a plaintiff's RLUIPA damages claims against ADC officials. *Heikkila v. Kelley*, 776 Fed. Appx. 927, 928 (8th 2019) (per curiam) (*citing Haight v. Thompson*, 763 F.3d 554, 570 (6th Cir. 2014) ("Every circuit to consider the question, whether before *Sossamon* of after, has held that RLUIPA does not permit money damages against state prison officials, even with the lawsuit targets the defendants in their individual capacities.")). Considering *Sossamon* and the above-cited cases, I find Plaintiff is not entitled to damages against Defendants in their individual capacities under RLUIPA and recommend those claims be dismissed.

### C. Plaintiff's Remaining Claims: Personal Capacity Damages Claims Under 42 U.S.C. § 1983 and Injunctive Relief Under § 1983 and RLUIPA

As mentioned above, Plaintiff sought damages and injunctive relief. Plaintiff's remaining damages claim lies under 42 U.S.C. § 1983 for alleged violations of his First Amendment rights. I note that under these circumstances, only nominal and punitive damages are available. *See Royal v. Kautzky*, 375 F.3d 720, 723 (8th Cir 2004). His claims for injunctive relief remain under both § 1983 and RLUIPA.

### 1.     **First Amendment and RLUIPA Claims**

Inmates retain their First Amendment right to free exercise of religion. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). Limitations, however, may be placed on the exercise of those rights based on the needs of the penal system. Constitutional claims that would otherwise receive strict scrutiny analysis are evaluated under a lesser standard in the context of a prison setting. *Turner v. Safley*, 482 U.S. 78, 81 (1987). Under *Turner*, a prison regulation may restrict a prisoner's constitutional rights if it is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89.

*Turner* sets out four factors courts should consider when evaluating freedom of exercise claims: (1) whether there is a valid rational connection between the prison regulation and the government interest justifying it; (2) whether alternative means are available to the inmate to exercise the right; (3) whether an accommodation would have a significant ripple effect on guards, other inmates, and prison resources; and (4) whether there is an alternative that fully accommodates the prisoner at *de minimis* cost to valid penological interests. *Id*. at 89-91.

In analyzing a free exercise claim, a court must "consider first the threshold issue of whether the challenged governmental action infringes upon a sincerely held religious belief and then apply the *Turner* factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological objectives." *Gladson v. Iowa Dep't. of Corrections*, 551 F.3d 825, 831-32 (8th Cir. 2009) (internal citation omitted).

Under RLUIPA, Congress established a statutory free exercise claim with a higher standard of review than that which applies to constitutional claims. The statute provides inmates with the following protection:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person-

> (1) is in furtherance of a compelling governmental interest; and
>
> (2) is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a)(1)-(2). Section 3 of RLUIPA protects inmate religious exercise in this manner when "the substantial burden is imposed in a program or activity that receives Federal financial assistance." *Id.* at § 2000cc-1(b)(1). RLUIPA defines "religious exercise" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* at § 2000cc-5(7)(A). A substantial burden

> significantly inhibit[s] or constrain[s] conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

*Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 813 (8th Cir. 2008).

### a. Saturday Services

Plaintiff alleged violations of his rights that occurred at the Grimes Unit of the Arkansas Department of Corrections. (Doc. No. 2.) At the time I first recommended Plaintiff's claims be dismissed, Plaintiff was incarcerated at the Delta Regional Unit. On February 19, 2020, Plaintiff notified the Court he had been moved to the Ouachita Regional Unit ("ORU"), where he is currently in custody. (Doc. No. 42.) Plaintiff complained that, while at the Grimes Unit, that he was unable to attend Saturday services. (Doc. No. 2.) At the ORU, Plaintiff has had the option to attend Saturday services for over a month now.[1] (Doc. No. 49; Doc. No. 49-1 at 2; 49-3.) Because

---

[1] The ADC notes "that due to concerns regarding COVID-19, group worship services of all religions have been temporarily suspended in order to protect the health and safety of the inmates and staff." (Doc. No. 49 at 5, n.1) In his Amended Response, Plaintiff says he has not been able to attend Saturday worship. (Doc. No. 47.) Plaintiff, however, did not add Assembly of Yahweh to his religious affiliation until April 7, 2020, and could not attend Assembly of Yahweh services

7

Plaintiff is no longer housed at the Grimes Unit—and because he is now able to attend Saturday services—his claims for injunctive relief are moot.[2] *Church of Scientology v. United States*, 506 U.S. 9, 12 (1992); *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985).

Defendants interpreted Plaintiff's claims to extend beyond the Grimes Unit. (Doc. No. 38 at 9 n.1). Defendants also acknowledge a possibility that at some point in the future Plaintiff might be sent to an ADC Unit that does not offer a Saturday service Plaintiff could attend. (Doc. No. 49 at 6.) But Plaintiff himself identified other ADC Units that offer Saturday services, such as Varner and Brickeys. (Doc. No. 49-8 at 25.) And a "mere possibility of transfer to another prison within the [Arkansas] correction system . . . is [not] sufficient to bring [Plaintiff's] claim within the narrow exception to the mootness doctrine." *Smith v. Hundley*, 190 F.3d 852, 855 (8th Cir. 1999) (internal citations omitted). I find this to be even more so where other Units within the ADC offer Saturday services. Accordingly, the Court lacks jurisdiction to consider Plaintiff's claims for injunctive relief regarding Saturday worship.

As to any § 1983 personal capacity damages claim, Defendants make no challenge to the sincerity of Plaintiff's beliefs regarding Saturday worship. As such, the Court will determine first

---

until he had done so. (Doc. No. 49-5, Doc. No. 49-2 at 2.) By April 14, 2020, the ADC was already taking measures to control the spread of COVID-19, including changes to the ADC's religious services policies—among them, congregational worship. (*See, for example*, *Shabazz v. Kelley*, case number 5:03-cv-00401-BRW (E.D. Ark.), Doc. No. 112, 113. (Temporary modification of permanent injunction granted in connection with measures to prevent the spread of Covid-19.)) Plaintiff does not dispute that the ORU, in normal times, offers Assembly of Yahweh Saturday services, and he has not raised claims challenging measures taken to combat Covid-19. Under these circumstances, I will not consider Plaintiff's assertion that he has not been able to attend a Saturday service after April 7, 2020, as creating a genuine issue of material fact in this case.

[2] Any further claims for injunctive relief directed at the Grimes Unit are likewise moot for the same reasons.

whether a substantial burden as was placed on Plaintiff's ability to practice his religion, as required when faced with both a constitutional and RLUIPA claim. *See Gladson*, 551 F.3d at 833.

Plaintiff maintains Defendants violated his rights by not offering Saturday services. (Doc. No. 2.) The ADC does not have a rabbi on staff and has not had a rabbi on staff at any time relevant to Plaintiff's claims. (Doc. No. 37-3 at 2.) The ADC does maintain a list of religious volunteers who are permitted to visit the prisons, but there are no Jewish volunteers on the list now or at any time relevant to Plaintiff's claims. (*Id*.) ADC allows inmates of all faiths to have group religious services supervised by an approved volunteer sponsor. (Doc. No. 37-3 at 4.) The requirement of a volunteer to lead services is for the security of the prison and applies to all religions. (*Id*.) The requirement of a volunteer to lead group services has been upheld by the Court of Appeal for the Eighth Circuit. *Tisdale v. Dobbs*, 807 F.2d 734, 738-40 (8th Cir. 1986).

Under ADC policy, Plaintiff is allowed to have a religious text and other purchased religious literature that does not conflict with security. (Doc. No. 37-3 at 5.) Plaintiff is also allowed personal visits from religious volunteers and one-on-one visits with approved religious leaders. (*Id*.) Inmates may also privately worship in the chapel as the facility and schedule allow. (*Id*.)

If Plaintiff identified a rabbi or other qualified individual to volunteer at the ADC, the ADC would permit Plaintiff to participate in group services. (*Id*. at 5.) According to Plaintiff's deposition testimony, however, he took only limited steps in the search for a rabbi: he asked Defendant Bradshaw for information for a local rabbi, wrote to an organization in Florida, and asked an ADC official for the contact information for a California non-religious organization. (Doc. No. 37-1 at 9-10; Doc. No. 37-3 at 5.) There was no local rabbi, and chaplains are not required to provide addresses of non-religious organizations. (Doc. No. 37-5 at 5, 6.) Plaintiff did

9

not personally request anyone to volunteer at the prison; he asserted he had no family and no one outside of prison to help, and Captain Bradshaw was his only resource. (Doc. No. 37-1 at 9, 12-13, 16.) Plaintiff, however, has multiple individuals listed on his relatives and associates list, including a lawyer, children, and a fiancée. (Doc. No. 37-2 at 1.)

The ADC has not prevented Plaintiff from obtaining a spiritual leader. (Doc. No. 37-3 at 6.) John Sparks, an ADC employee at the Grimes Unit whose duties include managing the law library, reviewed Plaintiff's requests for information while at Grimes; Plaintiff never submitted a written request for information pertaining to a rabbi, synagogue, or other Jewish organization. (Doc. No. 37-4 at 2.) Plaintiff did not seek information pertaining to a rabbi, synagogue, or other Jewish organization while at the Varner, Wrightsville, Tucker, or Delta Regional units, either. (Doc. Nos. 37-5 at 2; 37-6 at 2; 37-7 at 2; 37-8 at 2.) Further, the ADC is not required to provide a religious advisor for each group within a prison. *Cruz v. Beto*, 405 U.S. 319 (1972); *Blair-Bey v. Nix*, 963 F.2d 162, 163 (8th Cir. 1992).

Under these circumstances, no Defendant's action placed a substantial burden on Plaintiff's ability to practice his religion—and thus no First Amendment violation. *See Adkins v. Kaspar*, 393 F.3d 559 (5th Cir. 2004) (finding, albeit under a different definition of substantial burden, no violation where there was "dearth of volunteers" to lead service). Accordingly, summary judgment should be entered in Defendants' favor on Plaintiff's claims regarding the lack of Saturday services.

### b. Certified Kosher Meals

Plaintiff, who identifies as both Jewish and Assembly of Yahweh (Doc. No. 49-5), asserted that he did not receive kosher meals. For the purposes of this Recommendation, I will assume, without finding, that Plaintiff holds a sincere religious belief regarding his religious need for a

kosher diet. Plaintiff defines as a kosher diet as one that: abstains from pork and other unclean meat products; consists of meals prepared in areas untouched by pork and other unclean meat: and the food is prepared in the presence of and prayed over by a rabbi. (Doc. No. 37-1 at 8).

The ADC offers five meal plans: mainline; pork-free; vegetarian; vegan; and common fare. (Doc. No. 37-9 at 1.) By default, inmates are placed on the mainline diet, but can request a religious meal accommodation to receive common fare. (*Id.*) Common fare meals were developed with the assistance of a rabbi and are prepared in an entirely separate, kosher-compliant kitchen at the Cummins Unit, where they are sealed and packaged before delivery. (*Id.* at 2-3) While common fare meals are not "certified kosher," all of the ingredients in the common fare meals are kosher. (*Id.* at 2)

Plaintiff maintains common fare meals are not kosher because they are not prepared in the presence of and prayed over by a rabbi. He initially did not contest that common fare meals otherwise meet his definition of kosher. While at the Grimes Unit, Plaintiff was offered common fare, but declined and opted to remain on a medical diet accommodation. (Doc. No. 37-15 at 2; Doc. No. 37-1 at 5.) Plaintiff testified that he was never explained exactly what the common fare diet was. (Doc. No. 37-1 at 5.)

Defendants contend Plaintiff's claims are similar to those of the plaintiff in *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807 (8th Cir. 2008). In *Patel*, the plaintiff's "*halal* diet [did] not allow him to consume any meat unless the animal [had] been slaughtered during a prayer to Allah." *Patel*, 515 F.3d at 810. The plaintiff challenged all meal options available to him based on the lack of *halal* meat, as well as alleged cross-contamination between *halal* and *haram* (not *halal*) foods. The Court of Appeals for the Eighth Circuit found no substantial burden because the plaintiff had the option of purchasing *halal* vegetarian entrees and commissary items—and did not

11

provide financial information to support his claim that doing so would be cost prohibitive—and because the plaintiff did not exhaust alternative means of accommodating his religious dietary needs.

Here, as in *Patel*, Plaintiff had certified kosher food available for purchase at the commissary. Records reflect that Plaintiff purchased certified kosher goods such as crackers, cookies, chick-o-sticks, sausage, onions, cashews, kosher salsa, refried beans, chips, and pickles, among other items, as well as non-kosher fare. (Doc. No. 37-10.) In addition to those goods, ADC commissaries, varying by Unit, also offered for sale certified kosher candy bars, honey buns, bread, rice, cheese, tuna, sardines, and fish steaks. (Doc. Nos. 37-11 at 1; 37-12 at 1; 37-13 at 1; and 37-14 at 1. ) Plaintiff maintains he did not always have money (Doc. No. 37-1 at 10), but has not presented evidence that the expense of buying commissary items was cost prohibitive. He alleged the Grimes Unit offered only five certified kosher items and that each had a $100 limit; because of the limit, he asserted he could not buy food sufficient for meals for a week. (*Id*. at 10-11) The Grimes Unit, however, offered the following certified kosher entrees and snacks for purchase: rice; beans; chips (potato, corn, and tortilla); candy bars, cookies, donuts, snack cases, crackers, honey buns, tuna, sardines, fish steaks, and condiments. (Doc. No. 37-10 at 1.)

As in *Patel*, Plaintiff did not exhaust alternative means of accommodating his religious dietary needs. For example, based on the evidence in the record and as discussed above, Plaintiff made almost no effort to locate a rabbi though the ADC would allow a volunteer to be present and pray over food as it is prepared. (Doc. No. 37-3 at 4.) And there is also no evidence that Plaintiff ever explored receiving meals from other sources. Under these circumstances, like in *Patel*, Plaintiff has not established substantial burden.

In his Response to Defendants' Motion, Plaintiff for the first time alleged that the ADC's common fare meals do not satisfy his religious requirements because "the meals are not stored separately, warmed separately, and served with utensils that are not also used for non-kosher foods also." (Doc. No. 41 at 3.) In his Amended Response Plaintiff explains: "Although a kosher type of guideline was followed in preparing a set of meals for Plaintiff, were the same guidelines followed for distribution, service, and consumption of these meals (common fare)? No." (Doc. No. 47-3.)

Plaintiff concedes his common fare meals were prepared according to "a kosher type of guideline." (*Id*.) And it appears Plaintiff's argument against summary judgment now rests on the "distribution, service, and consumption" of his meals. Defendants argue that Plaintiff did not exhaust his administrative remedies before bringing these new claims. (Doc. No. 49 at 15-19.) I agree.

The Prison Litigation Reform Act ("PLRA") requires an inmate to exhaust available prison grievance procedures before filing suit in federal court. *See* 42 U.S.C. § 1997e(a); *Jones v. Bock*, 549 U.S. 199, 202 (2007); *Jones v. Norris*, 310 F.3d 610, 612 (8th Cir. 2002) (per curiam). Exhaustion under the PLRA is mandatory. *Jones*, 549 U.S. at 211. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules,' rules that are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 218 (quoting *Woodford v. Ngo*, 548 U.S. 81, 88 (2006)). Compliance with a prison's grievance procedures is, therefore, all that is required by the PLRA to properly exhaust. *Id.* Thus, the question as to whether an inmate has properly exhausted administrative remedies will depend on the specifics of that particular prison's grievance policy. *See id*.

The grievance policy of the Arkansas Department of Correction in effect at the time of the alleged constitutional violations was Administrative Directive 14-16, and Plaintiff's allegations are governed by that Directive. (Doc. No. 49-7; Doc. No. 49-6 at 1-2.) Pursuant to the Directive, an inmate is required to attempt informal resolution of a problem or complaint prior to filing a formal grievance. (Doc. No. 49-6 at 1-2.) This is accomplished by completing and submitting the Unit Level Grievance Form within fifteen days after the occurrence of the incident. (*Id*. at 5.) The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id*. at 5-6.) Only one issue may be grieved per form, and only one issue will be addressed per form. (*Id*. at 5.) Following an attempt at informal resolution, an inmate may proceed by filing a formal grievance on the same Unit Level Grievance Form. (*Id*. at 8.) The warden or his designee must provide a written response within twenty working days of receipt. (*Id*. at 10.) If dissatisfied with the response, the inmate may appeal within five working days to the appropriate Chief Deputy/Deputy/Assistant Director. (Doc. No. 49-6 at 11.) The Chief Deputy/Deputy/Assistant Director must provide a written response within thirty working days. (*Id*. at 12.) "A written decision or rejection of an appeal at this level is the end of the grievance process." (*Id*.) Administrative Directive 14-16 includes the following warning:

> Grievances must specifically name each individual involved for a proper investigation and response to be completed by ADC. Inmates must fully exhaust the grievance prior to filing a lawsuit. Inmates who fail to name all parties during the grievance process may have their lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties.

(*Id*. at 4-5.)

Before suing Defendants, Plaintiff did not bring to the ADC's attention his complaints about the storage, heating, or service of his meals, and he did not complain about utensils. (*See*

Doc. No. 49-8.) Up to the time of filing this lawsuit, Plaintiff's exhausted grievances—GR-18-930, GR-18-1227, GR-18-1241, and GR-19-193—had been in connection with his Jewish faith and receiving kosher meals; the ADC responded to Plaintiff's grievances as such. (Doc. No. 49-7 at 4-5.) Again, ADC policy directed inmates to include "a brief statement that is specific as to the substance of the issue or complaint" when filing a grievance. (Doc. No. at 5-6.) Plaintiff's new allegations regarding separate storage, heating, service, and utensils appear to go beyond a mainstream understanding of kosher requirements and thus go beyond what the ADC fairly could have anticipated as Plaintiff's concerns by the content Plaintiff's grievances. (Doc. Nos. 49-8, 49-9, 49-10, 49-11.)

Plaintiff did file one grievance that brought his concerns about the storage and heating of common fare meals to the ADC's attention, but that grievance was not exhausted until May 2, 2019, more than a month after Plaintiff filed this case. (Doc. No. 49-7 at 8.) The PLRA requires exhaustion before filing suit. Further, it appears some of Plaintiff's concerns could have been easily addressed. For example, Plaintiff complains about utensils being used for non-kosher food. The ADC, however, has disposable utensils available for common fare meals upon request. (Doc. No. 49-9 at 3.) Had Plaintiff brought his specific allegations to the attention of the ADC, a resolution may be been reached. Plaintiff did not exhaust his claims that common fare meals are not stored separately, warmed separately, and served with utensils that are not used for non-kosher foods, and I recommend those claims, raised first on summary judgment, not be considered now.

### c. Certified Kosher Commissary Items

Plaintiff's claim regarding commissary items appears to be that the ADC did not offer enough certified kosher items rather than failing to provide kosher items at all. (Doc. No. 37-1 at 11.) Plaintiff recalled purchasing and consuming crackers, refried beans, coffee, and perhaps fish

15

steaks at the Grimes Unit. (*Id.* at 10.) But the Grimes Unit offered the following certified kosher entrees and snacks for purchase: rice; beans; chips (potato, corn, and tortilla); candy bars, cookies, donuts, snack cases, crackers, honey buns, tuna, sardines, fish steaks, and condiments. (*Id.* at 1.)

Further, the ADC recently completed a process to ensure the proper designation of kosher items for sale at the commissaries. (Doc. No. 49-14.) Items designated as kosher will automatically appear as such at the electronic kiosks. (*Id.*) Amanda Bellomy, Commissary Manager at the ORU, provided Plaintiff with a list of kosher items for sale at ORU. (Doc. No. 49-12- at 2, 3-21.) Plaintiff asserts items from Union Supply and Keefe, two of the ADC's three suppliers, are not available at the ORU. (Doc. No. 47.) Even accepting that as true, Plaintiff may purchase at the ORU the following items provided by the third supplier, Robinson: rice, refried beans, cherry danish claw, honey bun, dry milk, peanut butter crackers, oatmeal, instant potatoes, and frosted flakes, among others. (Doc. No. 49-12 at 13-21.) Plaintiff has failed to establish that the selection of certified kosher goods offered was or is a substantial burden.

### 2. Fourteenth Amendment Claims

To the extent Plaintiff raised Fourteenth Amendment claims, I interpret those claims to arise out of Plaintiff's First Amendment free exercise claims. Accordingly, I recommend Plaintiff's Fourteenth Amendment claims be dismissed. *See Conyers v. Abitz*, 416 F.3d 580, 586 (7th Cir. 2005).

Because Plaintiff has not established a substantial burden, I find Defendants are entitled to qualified immunity on Plaintiff's First Amendment claim, and recommend that his requests for injunctive relief under both § 1983 and RLUIPA be denied. Accordingly, I recommend summary judgment be granted in Defendants' favor and Plaintiff's claims dismissed.

16

## IV.    CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1. Defendants' Motion for Summary Judgment (Doc. No. 37) be GRANTED.

2. Plaintiff's claims against Defendants be DISMISSED with prejudice.

3. The Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from any Order adopting these recommendations and accompanying Judgment would not be taken in good faith.

DATED this 27th day of April 2020.

_____
JOE J. VOLPE
UNITED STATES MAGISTRSTE JUDGE

17